### POWER MFG. CO. v. LINDLEY et al.
(No. 3383.)

Court of Civil Appeals of Texas. Texarkana.
May 19, 1927.

Rehearing Denied June 9, 1927.

1. **Sales** ⇐479(17)—**Purchaser, sued for price of engine levied on, but not removed, could bring cross-action for wrongful levy, though levy might be invalid as to innocent third party.**

Where seller of engine, retaining title, levied thereon on default in payment, fact that engine was not physically removed and the levy might have been invalid as to innocent third party did not prevent purchaser from bringing cross-action for wrongful levy.

2. **Sales** ⇐479(17)—**Sequestration of engine not physically removed held, under evidence, not proximate cause of damage to rice crop due to delay in pumping operations.**

In suit for balance of purchase money and to foreclose lien on engine, evidence held to show that levy of writ of sequestration on engine to be used in irrigating rice crop, not physically interfering with preparatory work or with position of engine, was not proximate cause of damage to rice crop caused by delay in pumping operations.

3. **Damages** ⇐62(1)—**Party aggrieved by wrongful sequestration must use reasonable diligence to lessen damages.**

Party aggrieved by wrongful levy of writ of sequestration on property must exercise reasonable diligence to prevent or lessen damages after wrong has been committed.

4. **Damages** ⇐62(1)—**Purchaser must exercise reasonable diligence at time of levy on engine to prevent injury.**

Purchaser of engine levied on held under duty to exercise reasonable diligence at time of levy to prevent injurious consequences which might be expected to follow from being deprived of use of engine.

5. **Damages** ⇐62(1)—**Purchaser's situation at time of levy on engine sold determines acts he should take to prevent injury from levy.**

Acts which purchaser of engine levied on should take to prevent possible injurious consequences from being deprived of use of engine are to be determined by his situation at time levy was made.

6. **Sales** ⇐479(17)—**Purchaser, claiming damages for wrongful levy on engine to be used in irrigating rice crop, had burden of proving levy delayed pumping operations, causing damage.**

In suit for balance of purchase price and to foreclose lien on engine to be used in irrigating rice crop, in which defendants filed cross-action in damages for wrongful levy, defendant had burden of proving that levy prevented completion of foundation for engine and commencement of pumping operations in time to prevent damage to rice crop.

7. **Sales** ⇐469—**Collateral agreement, extending time for paying past-due notes representing purchase price of engine sold, held valid extension of maturity of debt.**

Where seller under original sales contract on default was authorized to declare entire indebtedness due and resume possession of engine sold, collateral agreement, extending time of payment of past-due notes for purchase price, *held* valid extension of maturity of debt.

8. **Alteration of instruments** ⇐18—**Sales contract altered by seller after execution held immaterial in determining seller's right to recover engine sold.**

Where jury found that original sale contract retaining title in seller and authorizing seller on default to declare entire debt due and to repossess engine sold was altered after its execution, contract ceased to be of any value in determining rights of seller to recover possession of engine.

9. **Sales** ⇐467—**Note, authorizing seller to retake engine sold, if he deemed it unsafe, did not authorize seller to retake engine because not insured as required.**

Note for purchase price of engine, providing that payee could retake property, if he deemed it in any way unsafe, did not authorize seller to retake property solely because it was not insured as required by contract of sale.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Suit by the Power Manufacturing Company against E. R. Lindley and another, in which defendants filed a cross-action. Judgment for defendants on cross-action, and

plaintiff appeals. Reversed and remanded for new trial.

Boyles, Brown & Scott, Gainer B. Jones, and Pat N. Fahey, all of Houston, for appellant.

Huggins, Kayser & Liddell, of Houston, for appellees.

HODGES, J. The appellant is a private corporation with its domicile at Marion, in the state of Ohio. In April, 1924, it sold and delivered to H. F. and E. R. Lindley, the appellees in this suit, a Deisel oil engine. As a part of the consideration the appellees executed two notes, dated April 14, 1924, one for $1,237.50, due December 1, 1924, and the other for $1,237, due December 1, 1925. Each note contained the following stipulation:

"It is expressly conditioned and understood that this note is given for the purchase money of partial payment on one 70 h. p. type 'CBU' Prim oil engine complete, No. 1517; title and right of possession to which is reserved in the payee until this note shall be fully paid. If at any time the payee shall deem the said property to be in any way unsafe, he may take possession thereof at once, whether this note is due or not, and sell same at public or private sale; and in consideration of the use of said oil engine I hereby agree to pay balance of note remaining unpaid after net proceeds are applied."

On the same date both the appellant and the appellees signed a written sale contract which contained warranties by the seller, and a number of stipulations. The legal title was reserved till payment in full was made. The buyer was required to keep the property insured, and was not to move it without the written consent of the seller. A violation of any of those agreements authorized the seller to declare the entire debt due and to repossess the engine. For reasons which will appear later it is not necessary to state more fully the provisions of that contract. The contract was signed by the Power Manufacturing Company, by B. J. Knight, whose signature was witnessed by Virginia Dent. It was also signed by E. R. and H. F. Lindley, by H. F. Lindley, witnessed by Lanora Amy Knight. It was admitted by counsel that the contract had been filed in the office of the county clerk of Harris county on May 5, 1925, entered on the chattel mortgage record, and that the copy so filed carried the following provision:

"And deferred payment will be secured with a mortgage on 200 bags of rice delivered at mill."

In the trial it was claimed by the appellees that this last provision was not in the copy of the contract which they signed.

Nothing was paid on the first note at maturity, but $500 was paid in March, 1925, and at the same time a chattel mortgage was given on 200 bags of rice as additional security. In July following that payment the appellant filed this suit to collect the amount due on both notes and to foreclose its lien on the engine. It also applied for and secured the issuance of a writ of sequestration, which was formally levied on the engine on July 31, 1925. As grounds for the suit at that time it was alleged that the defendants had violated their contract by removing a part of the engine from the place where it had been located, without the written consent of the appellant, and by failing to keep the engine insured. In the affidavit made by the agent of the appellant for the writ it was stated that:

"It fears that the said E. R. Lindley and H. F. Lindley, defendants, will injure said property during the pendency of this suit."

The appellees answered, alleging that after the maturity of the first note, and before the institution of this suit, they had an agreement with the appellant by which the time for the payment of the first note was extended to December 1, 1925; that as a consideration for that extension they had paid on the note the sum of $500 in cash and had executed a chattel mortgage on 200 bags of rice as additional security. They also alleged that it was impossible to insure the engine because of the manner in which they were required by the appellant to install it. In addition to these and other defenses, appellees pleaded, in reconvention, that by reason of the levy of the writ of sequestration on the engine they had been deprived of its use in pumping water at a time when it was necessary to irrigate their crop of rice, and as a result of being deprived of the use of the engine their crop had been damaged to the extent of $10,000. Appellant replied denying the agreement to extend the payment of the note, and further alleged that such an agreement, if made, was without consideration; that the $500 paid was upon an existing indebtedness then due; and that the chattel mortgage given on the 200 bags of rice was in compliance with the stipulations of the original contract of sale.

In their supplemental answer appelleees charged that the latter stipulation had been added to the contract without their knowledge or consent after they had signed the instrument, and was therefore a forgery. Other issues were raised by the pleadings, which will be referred to later. The case was tried on October 7, 1925.

In response to special interrogatories the jury found, in substance, as follows: (1) That the provision, "And deferred payment will be secured with a mortgage on 200 bags of rice delivered at mill," found in the contract offered in evidence, was not in the contract at the time it was signed by the appellees; (2) that the failure of the defendants to keep the engine insured was not a reason for the plaintiff's declaring both notes due at the time the sequestration was issued; (3)

that the plaintiff agreed to allow the defendants to keep the engine until December 1, 1925, and use it while making the crop of 1925 on the Sweeny farm, in consideration of payment by defendants of $500 on their indebtedness and the execution of a mortgage on 200 bags of rice; (4) that the plaintiff knew at the time that the defendants were expending money on their rice crop and on the water well, in reliance upon their understanding that they were to be permitted to keep the engine for use in making the rice crop on the Sweeny farm; (5) that the defendants expended money in reliance upon that agreement; (6) that insurance upon the engine could have been obtained by the defendants; (7) that the plaintiff consented that defendants might move the engine from its original location to the Sweeny farm in consideration of the $500 and the execution of a chattel mortgage; (8) that the plaintiff knew at the time it accepted the payment and chattel mortgage that the defendants would move the engine to the Sweeny farm for the purpose of making the 1925 crop; (9) that the moving of the engine without plaintiff's consent was not the reason for declaring both notes due at the time of the sequestration; (10) that defendants were prevented from obtaining insurance on the engine by the manner in which its installation had been directed by the plaintiff; (11) that the plaintiff waived the clause in the contract of sale providing for insurance; (12) that it was a part of the agreement made in March, 1925, that insurance upon the engine should be procured and kept in force by the defendants; (13) that plaintiff did not fear that the defendants would injure the engine during the pendency of the suit; (14) (rendered immaterial and not answered) (15) that the act of the plaintiff in causing the writ of sequestration to be levied was the proximate cause of injury to the defendants' rice crop; (16) that defendants' loss amounted to $5,140. In response to a special issue requested by the plaintiff, the jury also found that defendants would have properly cultivated their rice crop from the time water could have been put on it from their new well until it matured, had they not been interrupted by the sequestration.

After stating a finding that the notes sued on were not due at the time the writ of sequestration was issued, the court entered a judgment in favor of appellees on their cross-action for $5,140. From that amount he deducted as an offset $2,241.24, the balance unpaid on the notes, leaving a net sum of $2,898.76 due the appellees, for which they might have an execution.

In this appeal it is contended that, conceding that the writ was wrongfully issued, the appellant was entitled to an instructed verdict, for two reasons: (1) Because the evidence shows that there had been no valid sequestration of the engine; and (2) because the evidence conclusively shows no damage to the rice crop resulted from the levy that was made.

[1] The first proposition is, we think, untenable. It is true the officer did not take actual physical possession of the engine and move it; but he did take formal possession, and directed Lindley not to exercise any dominion over it. The engine was a heavy piece of machinery, weighing over 16,000 pounds, and was not moved on that account. Appellant's attorney accompanied the officer and directed the details in the execution of the writ and gave the notice to Lindley. Appellant cannot now claim that Lindley should have ignored the levy and those directions. Even if the levy might have been invalid as to an innocent third party, it is good as a basis for a cross-action against the instigator of a wrongful levy.

The second proposition requires a more extended inquiry into the facts. H. F. and E. R. Lindley, the appellees, were farmers engaged in growing rice in Harris county about 22 miles from Houston. It appears that their means were somewhat limited, and they had been unable to meet their first note at maturity. In 1924 they owned, or controlled, a farm, called the Gerdie farm, on which they installed and used the engine purchased from the appellant in irrigating their rice crop. In 1925 they leased another farm, called the Sweeny farm. This latter farm was situated about a mile, or less, from the other. Appellees decided to move the engine from the Gerdie farm to the Sweeny farm, where they had planted about 125 acres in rice. In order to secure a water supply for irrigating the crop they began drilling a deep well on the Sweeny farm about the first days of July, 1925. They also began laying a concrete foundation for the engine to be used in pumping water from the well. H. F. Lindley was in the active management of the farms and the construction of these improvements. The levy of the writ was formally made, and citation served on Lindley about noon, on July 31, 1925. At that time the well was nearly completed, and was finished within a few days thereafter. It is not here claimed that the levy materially interfered with the work on the well. While others were drilling the well, Lindley and two or three laborers were engaged in laying a concrete foundation for the engine. He thus describes the situation at the time the writ was levied:

"I started the foundation the day before they (the officer) came up there for that engine, and I finished it that day. I was going to start this outboard bearing the day they came up there, but I didn't get it started that day. I lacked about a load of gravel and wouldn't start it until I had enough material to finish it. With the machine I had I could have finished that outboard bearing in about an hour and a half. My

truck was after a load of gravel, and it returned that Friday (that day) with it, but I wouldn't finish it after it got back. * * * The only thing that remained to be completed was the wing, about 3½ or 4 feet deep and about 40 inches wide and around 4½ or 5 feet long; and I could have finished it within an hour, with the machine I had, if I had had the gravel there. * * * I told you awhile ago that my truck had gone after a load of gravel when I stopped on Friday, and it had. I lacked about a yard to finish up, and that is the reason I hadn't poured it Friday morning.".

Immediately upon receiving notice of the suit and the levy of the writ Lindley abandoned his concrete work, discharged the laborers employed for that purpose, surrendered the concrete mixing machine to the owner, and went to Houston. On Saturday, the following day, he secured a blank replevin bond, to which he undertook to get signatures. The amount of the bond was $6,600, double the purchase price of the engine. During the following week he secured the required signatures, and the bond was approved on the morning of August 10. Elsewhere in his testimony Lindley admitted that up to that time he could not have used the engine even if it had not been levied on. On Thursday and Friday before the bond was made Lindley took the material which had been collected for building the "outboard" and used it around the well. During the week following the making of the bond he completed the "outboard" and made other preparation for setting the engine in place. The engine was moved and placed on its foundation about the 17th or 18th, but pumping water did not begin till the 24th or 25th of August, about two weeks, or more, after the replevin bond was executed. At that time, according to the testimony, the crop was seriously injured because of the lack of water. Lindley, however, admitted that up to the 14th or 15th of August the rice had suffered no material injury, and could have been saved, had he been able to begin pumping water at that time.

[2] The question is, Does this and other testimony of similar import and more in detail show that the levy of the writ was the proximate cause of the damage to the rice? In other words, was the delay in beginning the pumping operations the natural and direct consequence of the levy of the writ? That taking possession of the engine under the writ, and its retention till replevied, presented no physical interference with its use in the timely irrigation of the rice, must be conceded. The engine was not moved by the officer executing the writ, but left where the appellees had placed it, and where it would have remained till after the foundation was completed, had no writ been levied. According to Lindley's testimony it would not have been used sooner than the 12th of August. He also stated that its operation was

not actually needed to prevent damage before the 14th or the 15th of August. The real cause of the failure to start the pump on or before the 15th of August was, according to Lindley, the delay in completing the foundation for the "outboard" to which he refers in the testimony quoted. This was a small structure which contained approximately 65 cubic feet of concrete. With the equipment Lindley had on hand at the time of the levy this could have been built in an hour and a half, and it had been his intention to build it that afternoon. But when notified of the suit and the levy he voluntarily abandoned the work, discharged his laborers, and returned the machine used in mixing the material. With the record before us there is not the least doubt that if that "outboard" had been completed at that time, or during the following week, when Lindley was doing other work, which might have been done later, there would have been no occasion whatever for this damaging delay in pumping water onto the crop.

[3-5] It thus appears that, if the levy of the writ caused any delay in completing the preparations for pumping, it did so only indirectly by diverting the personal attention of Lindley to the making of the bond. There was no physical interference by the officer with that preparatory work. Nothing occurred at the time of the levy which apparently required its abandonment; and Lindley gives no reason why he could not have continued long enough to finish the "outboard," or why that particular work could not have been done by the employees he had engaged for that purpose. He testified on the trial that he was not a concrete man, implying that he was not skilled in that character of work; nor does he give any reason why this unfinished work could not have been performed by employees during the time he was trying to secure signatures to his bond. The rule in this character of cases is: The aggrieved party must exercise reasonable diligence to prevent or lessen damages after the wrong has been committed. 1 Sutherland on Damages (3d Ed.) § 90. In this instance the wrong, if any, was committed when the writ was levied, at noon on Friday, July 31. It then became the duty of Lindley to exercise reasonable diligence to prevent the injurious consequences which might be expected to follow from being deprived of the use of the engine. What he should and could have done is to be determined by his situation at the time the levy was made. He had then 125 acres of growing rice which must be irrigated within a short time. He had practically completed a well, at a cost of more than $3,000, which was designed to furnish the water supply; and had laid the principal part of the foundation for the machinery to be used in pumping water from the well. He lacked only a small concrete block, or base,

containing approximately 65 cubic feet, of having the foundation completed. The completion of that base was a comparatively insignificant part, in cost and labor, of the general preparations which had been made for irrigating the crop. The engine seized, or another, was required to save the crop. Lindley realized that, and decided at once to replevy the engine which had been taken from him. He must therefore have contemplated using that part of the foundation the "outboard" which had not then been laid. Its completion in time for the concrete to dry, or set, was of vital importance, and there is no good reason given why that was not done. There was, therefore, no necessary causal connection between the levy and the delay in preparations for pumping water onto the rice.

[6] In prosecuting their cross-action for damages, it devolved upon the appellees to show the essential connection. They had the burden of proving that the levy prevented them from completing the foundation at the proper time. In this, we think, they failed. For that reason the finding of the jury upon the issue of proximate cause is without legal support in the evidence.

[7] In discussing the question just disposed of, it has been assumed that this suit by the appellant was prematurely brought and the writ was wrongfully issued. But the appellant does not concede that to be true. It insists that under the terms of the note, if not under the sale contract, it had the right to declare the indebtedness due and to repossess the engine. Clearly, under the terms of the original contract the defaults shown did authorize the seller to declare the entire indebtedness due and to resume possession of the engine. Appellees, however, pleaded and proved an agreement extending the time of payment of the past-due note till the 1st day of the following December. Without discussing the evidence in detail, we are inclined to think that this collateral agreement must be here treated as a valid extension of the maturity of the debt.

[8, 9] The jury also found that the original sale contract had been altered after its execution by the appellees. While the evidence relied on to support that finding is not entirely satisfactory, we cannot say that it was wholly insufficient. It follows, then, that by reason of the alteration in its provisions this contract ceased to be of any value in determining the rights of the appellant to bring the suit or to recover possession of the engine. But the note, a separate instrument, contained this provision:

"If at any time the payee shall deem the property to be in any way unsafe, he may take possession thereof at once, whether this note is due or not, and sell same at public or private sale."

The only condition disclosed by the record which may be relied on as rendering the property unsafe is the fact that it was uninsured. According to the evidence and the finding of the jury, keeping the engine insured was a part of the extension agreement. The jury found that the appellees had failed to perform that part of the agreement. In response to a special interrogatory the jury also found that this provision of the extension agreement had been waived. Appellant attacked that finding as unsupported by the evidence. An examination of the testimony, including the correspondence that passed between Lindley and the appellant's agents before and after that extension agreement was made, shows very clearly that there was no waiver; on the contrary, there was a continuous and persistent demand upon the appellees to have the property insured. But there was no provision in the note which authorized the appellant to take possession of the property solely because it was not insured.

Appellant also complains of the charge of the court upon the measure of damages. Since the case is to be reversed and remanded for another trial and the conditions to which that charge applied no longer exist, it is not necessary to pass on that question. The amount of damages awarded by the jury in this case is apparently exorbitant, but no complaint is made of it on that ground.

Because of the insufficiency of the evidence to sustain the finding that the levy of the writ was a proximate cause of the damages recovered, the judgment is reversed, and the cause remanded for a new trial.